LOGAN, Circuit Judge,
dissenting in part:
I comment on two issues in the majority opinion, on one of which I must dissent.
The majority holds that the security agreement relating to the consigned goods was sufficient to give Maxi Sales Company a security interest in them. It finds that the financing statement was insufficient, however, because it did not identify an interest in the consigned goods as items or a type of property, as required by Kan. Stat.Ann. § 84-9-402(1). The financing statement listed proceeds, accounts receivable, and intangibles “arising from a certain consignment agreement.” But it did not list inventory or consigned goods expressly or give any other description that identified the consigned goods themselves as property in which there was to be a security interest.
Failing to list the consigned goods or make a reference to inventory, of which the consigned goods surely were a part, was a mistake on the part of the person who drafted the financing statement, of course. But financing statements are construed generously in favor of the creditors who file them. The U.C.C. theory is that the statement is sufficient if it provides enough notice of the creditor’s claim to lead a later would-be creditor to make further inquiry. See Tri-State Equipment, Inc. v. Allis-Chalmers Credit Corp., 792 F.2d 967, 971-92 (10th Cir.1986). Thus, the majority’s reading is somewhat restrictive. If I were offered a security interest in this merchant’s inventory after review of this financing statement, I would wonder whether all of that inventory was available and free of Maxi’s lien. I nevertheless join the majority on this issue. Technically there is no appropriate reference to inventory or consigned goods.
I have more trouble with the majority’s holding that any perfected security interest Maxi had in the inventory was lost under Kan.Stat.Ann. § 84-9-306(4). The majority treats the bankruptcy proceeding as the “insolvency proceedings” mentioned in the statute, although it occurred after the parties initiated the state receivership. It holds that Maxi’s security interest failed because there was commingling of cash proceeds from inventory in which Maxi had a secured interest and from inventory acquired during the state receivership, and no proceeds were identified as having been received from sales of the inventory for which Maxi was a secured party within ten days of the institution of the bankruptcy.
The phrase “insolvency proceedings” in § 9-306(4) is not restricted to federal bankruptcy proceedings. See Kan.Stat.Ann. § 84-1-201(22) (term includes “any assignment for the benefit of creditors or other proceedings intended to liquidate or rehabilitate the estate”); id. § 84-1-103 (prior state law continues under UCC when not displaced). I believe the initial state law receivership also was an “insolvency proceeding” under § 9-306(4). See 1 R. Anderson, Uniform Commercial Code § 1-201:359 (3d ed. 1981) (recognizing that the “insolvency” provision may be invoked by state law proceedings).
The majority argues that, even if insolvency proceedings were deemed instituted *1302 at the time of the appointment of the state receiver, the result would be the same because there was no proof of proceeds received “within ten days” of the proceedings as required by § 9-306(4)(d)(ii). But this presumes that proceeds arising after insolvency proceedings also are controlled by § 9-306(4). That is not the case.
The purpose of § 9-306(4) is to resolve the problem of a debtor and a creditor both claiming hard-to-identify funds that were commingled before insolvency proceedings. See J. White & R. Summers, Uniform Commercial Code § 24-6, at 1-11 (“At bankruptcy many debtors either have proceeds among their assets or recently have paid proceeds over to a creditor .... [The] creditor and the debtor’s trustee in bankruptcy both claim the right to such proceeds .... This is the principal question of this section_”) (emphasis added). The express language of § 9-306(4) reveals this. The section states: “In the event of insolvency proceedings ... a secured party has a perfected security interest only in ... accounts of the debtor in which proceeds have been commingled with other funds ...” (emphasis added). The statute thus plainly applies only to proceeds that were commingled prior to the time of insolvency proceedings.
In the case before us, at the time the state insolvency proceedings were instituted Maxi had, with respect to its promissory note, a perfected security interest in the debtor’s inventory and not simply in proceeds. The inventory at issue apparently was readily identifiable. Any sale of such inventory, after insolvency proceedings, presented no sticky commingling problem. The receiver, a neutral third party, knew what the debtor’s inventory was and what proceeds were received from each portion of it. If the receiver obtained cash from sales after institution of insolvency proceedings, that was money for the receiver to distribute among the creditors according to the priorities existing at the time of his appointment.
To say that § 9-306(4) applies also to proceeds that were later commingled sets up a disturbing Catch-22. There will never be proceeds received “within ten days before the institution of insolvency proceedings” with regard to items sold after insolvency proceedings. Unwary secured creditors always would lose here.
The defendants have suggested that Maxi should have protected itself by requiring the receiver to use segregated accounts. See § 9-306(4)(a). But creditors need not protect themselves from receivers or bankruptcy trustees. Cf. 11 U.S.C. § 552(b) (secured party retains security interest in proceeds from sale of secured item by bankruptcy trustee). Insolvency proceedings under either state or federal law freeze priorities; subsequent events do not alter priorities. Transactions engaged in by receivers or bankruptcy trustees look first to the relevant insolvency statutes for their effect, and only then to the UCC.
That federal insolvency proceedings superseded the state insolvency proceedings does not change anything. For the purposes of this case we should treat them as one proceeding, instituted at the time of the earlier state proceeding.
I therefore would find that because Maxi held a perfected security interest in its debtor’s inventory immediately after the state receiver was appointed, it did not lose the security interest after the receiver’s sale of the debtor’s inventory. The bankruptcy trustee, now holding the monies from this sale, would be required to turn them over to Maxi as a secured party, to the extent they did not exceed the total of its secured interest — just as the state receiver would, if federal bankruptcy proceedings had never been initiated. Whether Maxi’s consent to state receivership fairly could be called a “disposition” under Kan.Stat.Ann. §§ 84-9-501 to -508 is not at issue.
The question whether both a state receivership and a federal bankruptcy are “insolvency proceedings” within the meaning of § 9-306(4) was not briefed or argued by the parties. But I think the issue was preserved; the parties did contend over whether § 9-306(4) applied to the case. *1303 That Maxi failed to cite § 84-1-103(22) and to develop this particular interpretation of § 9-306(4) should be no more fatal to its appeal than if it had omitted citation of an important case. This court must construe the law properly to provide guidance for others who may be similarly situated. I fear that the majority’s construction of § 9-306(4) will seriously mislead others caught in this same circumstance.
For this reason I dissent.